IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LINDA JARVIS and SARA
VILLANUEVA, Individually and as Class
Representatives,

        Plaintiffs,

v.

MATLIN PATTERSON GLOBAL
ADVISERS, LLC,

        Defendant.

C.A. 11-864-RGA

## MEMORANDUM OPINION

David S. Eagle, Esq., Wilmington, Delaware; Charles A. Ercole, Esq. (argued), Philadelphia, Pennsylvania; Attorneys for Plaintiffs Linda Jarvis and Sara Villanueva.

Bradley R. Aronstam, Esq., Wilmington, Delaware; Michael C. Hefter, Esq. (argued), New York, New York; Attorneys for Defendant Matlin Patterson Global Advisers, LLC.

June 11, 2012
Wilmington, Delaware

*[signature: Richard G. Andrews]*

**ANDREWS, United States District Judge:**

Defendant Matlin Patterson Global Advisors, LLP brings a motion to dismiss against Plaintiffs Linda Jarvis and Sara Villanueva based on the theory of claim preclusion. (D.I. 6.) The allegations of the complaint are accepted as true for the purposes of deciding the Defendant's motion.

Plaintiffs formerly worked for Premium Protein Products, LLC, a wholly owned subsidiary of PPP Holdings, LLC (collectively, "PPP Entities"). (D.I. 1, ¶ 1.) Matlin was the majority shareholder of the PPP Entities. (D.I. 1, ¶ 1.) The PPP Entities conducted mass layoffs and filed for bankruptcy in 2009. (D.I. 1, ¶¶ 1-2.) Plaintiffs allege that the manner of these layoffs violated employee rights, and seek recovery on an individual and a class basis against Matlin, alleging that Matlin is liable for the PPP Entities' violations through "single employer" and "alter ego" theories. (D.I. 1, ¶ 2.) Plaintiffs allege that Matlin "maintained direct responsibility for the PPP Entities' strategic, financial, human resources and benefits functions by, among other things, exercising control over the PPP Entities' business plans (including those concerning the day-to-day operation of the business) and making decisions to obtain financing, fund the PPP Entities, declare bankruptcy, layoff employees and/or dissolve the company, to the detriment of the PPP Entities and their employees." (D.I. 1, ¶ 2.) Consequently, Matlin violated the Worker Adjustment and Retraining Notification ("WARN") Act and the Nebraska Wage Payment and Collection Act by conducting layoffs without proper notice to employees and by failing to pay severance, benefits, earned wages, bonuses and other compensation. (D.I. 1, ¶ 2.)

Plaintiffs previously filed an Adversary Complaint against the PPP Entities in the PPP Entities' bankruptcy proceeding. (D.I. 8, Exh. 1 at ¶ 1.) Matlin was not named as a defendant.

2

(D.I. 8, Exh. 1 at ¶ 1.) The Adversary Complaint alleged that the PPP Entities shut down operations and conducted layoffs in a manner that violated employee rights under the WARN Act. (D.I. 8, Exh. 1 at ¶ 1.) Plaintiffs, however, entered into the "Stipulation to Dismiss Adversary Complaints and Proceed as Class Proofs of Claim" ("Stipulation.") (D.I. 8, Exh. 4.) This Stipulation provided for the "voluntary dismiss[sal] with prejudice" of the Adversary Complaint in exchange for allowing Plaintiffs to pursue the class action claims through the "Proof of claim" process. (D.I. 8, Exh. 4.) The bankruptcy court later ordered a sale and distribution of the PPP Entities' assets pursuant to Section 363 of the Bankruptcy Code. (D.I. 8, Exh. 5.) As a result of this sale, Plaintiffs were unable to recover anything on their claims because the PPP Entities' assets were exhausted. (D.I. 11, p. 6.) The Bankruptcy Court dismissed the PPP Entities proceeding. (D.I. 8, Exh. 6.) Subsequent to these events, Plaintiffs filed the instant complaint against Matlin.

Matlin moves to dismiss all of Plaintiffs' claims as barred by the doctrine of claim preclusion. For claim preclusion to apply, there must have been "(1) a final judgment on the merits in (2) a prior suit involving the same parties or their privies, and (3) a subsequent suit based on the same cause of action." *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 172 (3d Cir. 2004).[1] "If these three factors are present, a claim that was or could have been raised previously must be dismissed." *Id.*

The parties dispute whether the Stipulation is a final judgment on the merits. Matlin argues that the Stipulation meets this requirement, because Plaintiffs agreed to dismiss the WARN Act claims with prejudice. Plaintiffs disagree, arguing that the Stipulation did not fully

---

[1] Other Third Circuit cases make clear that the "same cause of action" is interpreted broadly, so that multiple causes of action arising from one transaction are considered to be the same cause of action for claim preclusion purposes. *See Gregory v. Chehi*, 843 F.2d 111, 117 (3d Cir. 1988).

3

adjudicate the WARN Act claims, as those claims continued through the bankruptcy proof of claim process, and were never declared valid or invalid; they were only discharged because no assets remained in the bankruptcy estate.

Plaintiffs' position is without merit. It is undisputed that the voluntary dismissal of a claim with prejudice constitutes a final judgment on the merits. *See Gambocz v. Yelencsics*, 468 F.2d 837, 840 (3d Cir. 1972). This is true even when the dismissal occurs within the bankruptcy context. *See In re Martin*, 96 F. App'x 62, 63-64 (3d Cir. 2004). In entering into the Stipulation, Plaintiffs made a deal with the PPP Entities. They agreed to forfeit the WARN Act litigation in exchange for an opportunity to realize the class claims through the proof of claims process. Plaintiffs may now regret this deal. The deal gave them one path to the possibility of recovery—through the proof of claims process. The process was available to Plaintiffs precisely because they relinquished the right to pursue the Adversary Complaint. The depletion of the estate before Plaintiffs could realize their claims is irrelevant. The risk of coming up empty should have been known, and undoubtedly was known, to Plaintiffs when they made the Stipulation. Further, it makes no difference that the validity of the dismissed claims was never tested; there is no requirement for a claim to be factually vetted to be a final judgment on the merits. *See Selkridge*, 360 F.3d at 172. The Stipulation is analogous to a forfeit in baseball; no at-bats were taken, no pitches were thrown, but it counts as a loss in the final standings. The voluntary dismissal with prejudice is a final judgment on the merits.

The parties also dispute whether the litigation was "a prior suit involving the same parties or their privies." *Id.* The Plaintiffs are the same in both cases. The Defendants, however, are not identical, as the Adversary Complaint was filed against the PPP Entities, while the instant complaint was filed against Matlin, the majority shareholder of the PPP Entities. The question

4

then is whether Matlin and the PPP Entities are privies. The concept of privity in the context of claim preclusion is an elastic one grounded in principles of fairness, requiring a "close relationship" between the alleged privies.[2] "[A] lesser degree of privity is required for a new defendant to benefit from claim preclusion than for a plaintiff to bind a new defendant in a later action." *See Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 966 (3d Cir. 1991). Plaintiffs' allegations establish privity between Matlin and the PPP Entities, as they allege that Matlin was so intertwined with the operations of the PPP Entities that Matlin should be financially responsible for the PPP Entities' employment law violations. Specifically, Plaintiffs allege that, "Matlin maintained direct responsibility for the PPP Entities' strategic, financial, human resources and benefits functions by, among other things, exercising control over the PPP Entities' business plans (including those concerning the day-to-day operations of the business) and making decisions to obtain financing, fund the PPP entities, declare bankruptcy, layoff employees and/or dissolve the company." (D.I. 1, ¶2.) Plaintiffs' entire complaint is thus predicated upon an extremely close relationship between Matlin and the PPP Entities. Principles of fairness are furthered by this result. It would be unfair to allow them a second bite of the apple by filing essentially the same suit against Matlin. The Court holds that Matlin and the PPP Entities are privies.

The final element required to establish claim preclusion asks whether the instant suit against Matlin is based on the same cause of action as the prior suit against the PPP Entities. *Selkridge,* 360 F.3d at 172. "[A] party may not split a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits; instead, a party must raise in a

---

[2] "Where the party to be bound in a second proceeding is different from the party against whom the original adjudication was made, a close relationship between them is a requirement of fairness and may be necessary to provide due process of law." *Bruszewski v. United States*, 181 F.2d 419, 422 (3d Cir. 1950).

single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together." *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) (interpreting Third Circuit case law).

Plaintiffs argue that claim preclusion should not apply because the "same cause of action" test is viewed narrowly in the context of a bankruptcy case, especially when the prior suit involved a cause of action against a corporation in that corporation's bankruptcy proceeding and the current suit is against that corporation's controlling shareholder. Plaintiffs cite *Eastern Mineral & Chemical Co. v. Mahan*, 225 F.3d 330, 338 (3d Cir. 2000) for this proposition. In *Eastern Minerals*, the plaintiff pursued recovery from the sole shareholder of the bankrupt Delta corporation based on an alter ego theory, alleging that the defendant breached his fiduciary duty and the duty of loyalty. *Id.* at 330, 333. The defendant moved to dismiss the plaintiff's suit for claim preclusion, arguing that the plaintiff should have pursued its claim in the context of Delta's bankruptcy case. *Id.* at 330. The Third Circuit noted that district courts should proceed carefully in applying claim preclusion principles to litigation that take place in the context of a bankruptcy case. *See id.* at 337. Specifically, the Third Circuit concluded that "a claim should not be barred unless the factual underpinnings, theory of the case, and relief sought against the parties to the proceeding are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum." *Id.* at 337-38.

The claims against Mahan were not precluded, because the "[plaintiff] never sought what its current claim would accomplish." *Id.* at 338. The plaintiff had been an active participant in the bankruptcy, filing a number of motions and objections that claimed inequitable conduct on the part of various entities controlled by the defendant. *Id.* at 337. No claim brought in the

6

bankruptcy, however, shared factual underpinnings or the underlying legal theories with the alter ego claim of the instant suit. *See id.* The most similar claim was an equitable subordination complaint, which existed in draft form, that sought to subordinate the claims of other creditors controlled by the defendant. *Id.* This claim, however, was never actually filed. *Id.* The subsequent complaint against Mahan sought recovery against him personally, alleging a breach of fiduciary duty in using Delta as Mahan's "mere instrumentality" for personal benefit. *Id.* at 338. The Third Circuit found the theories of relief so "markedly different" that the claims of the instant complaint could not be said to have arisen from the same cause of action as anything that occurred in Delta's bankruptcy. *See id.*

The facts of the case at hand are distinguishable from *Eastern Minerals*. Unlike the plaintiff of *Eastern Minerals*, the Plaintiffs here did in fact file a cause of action during the PPP Entities' bankruptcy, namely the Adversary Complaint. Importantly, the factual underpinnings giving rise to the theory of relief in both suits are identical. Both hinge upon the unceremonious shutdown of the meat processing plant where Plaintiffs worked. The legal theories overlap, as both suits allege WARN Act violations. The mere fact that Plaintiffs added a count alleging violations of the Nebraska Wage Payment and Collection Act to the instant complaint does not make that suit one arising from a distinct cause of action. The Third Circuit in *Eastern Minerals* did not intend to abandon the traditional rule that a plaintiff may not split a cause of action into several suits in order to avoid the consequences of claim preclusion. Instead, the Court's main concern was that bankruptcy jurisdiction is very broad, and a rule the consequences of which would be to multiply the number of bankruptcy proceedings was not desirable. "Claim preclusion only bars claims arising from the same cause of action previously raised, not every conceivable claim that could have been brought in the context of a bankruptcy case over which

the court would have had jurisdiction." *Id.* at 337. Because both of Plaintiffs' suits stem from the same factual incidents and allege overlapping legal theories, and the first suit was actually brought in the bankruptcy proceeding, the Court holds that the suits are based on the same cause of action.[3]

For all these reasons, the Court holds that Plaintiffs' claims are claim precluded and grants Matlin's motion to dismiss with prejudice.[4]

An appropriate order will enter.

---

[3] Plaintiffs fear the Court's decision will have the "practical ramifications" of requiring any alter ego claims a creditor may have against a non-debtor controlling shareholder in the bankruptcy to be brought in the bankruptcy itself or be deemed precluded. This fear is unfounded, as "any claim" a creditor may have against the shareholder will not be precluded; the claims must share close factual and legal similarities to a claim actually brought in the bankruptcy proceeding for preclusion to apply. *See Eastern Minerals*, 225 F.3d at 338.

[4] At oral argument, counsel for Plaintiffs noted that the relevant statutes of limitations had not run, and that other members of the class could bring the same lawsuit and seek class status. Thus, while this ruling ends the claims of the two named plaintiffs, it has no effect on the ability of other members of the class to bring suit.